# JUDGE BUCHWALD

09 CV 1906

ANDERSON KILL & OLICK, P.C.
GREGORY HANSEN (GH3516)
ghansen@andersonkill.com
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 278-1000
Facsimile: (212) 278-1733

Attorneys for Plaintiff CARRICKMORE PROPERTY &
DEVELOPMENT CO., LLC, a Delaware limited liability company,
On Its Own Behalf and On Behalf Of All Others Similarly Situated



RECEIVED
MAR 02 2009
U.S.D.C. S.D. N.Y.
CASHIERS

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARRICKMORE PROPERTY & DEVELOPMENT CO., LLC, a Delaware limited liability company, On Its Own Behalf and On Behalf Of All Others Similarly Situated, ) ) ) ) ) | Case No.: |
| | CLASS ACTION COMPLAINT , CERTIFICATION, AND DEMAND FOR JURY TRIAL |
| Plaintiff, ) ) ) | |
| v. ) ) ) | |
| JAMES M. NICHOLSON, WESTGATE CAPITAL MANAGEMENT, LLC, a Delaware Limited Liability Company; WESTGATE STRATEGIC GROWTH FUND, LP, a Delaware Limited Partnership; WESTGATE PREMIERE GROWTH FUND, LP, a Delaware limited partnership; WESTGATE ALPHA FUND, LP, a Delaware Limited Partnership; WESTGATE EQUITY FUND, LP, a Delaware Limited Partnership; WESTGATE FOCUS FUND, LP, a Delaware Limited Partnership; WESTGATE ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

SUMMIT FUND, LP, a Delaware )
Limited Partnership; WESTGATE )
OPPORTUNITY FUND, LP, a )
Delaware Limited Partnership; )
and WESTGATE ABSOLUTE )
RETURN FUND, LP, a Delaware )
Limited Partnership, )
)
        Defendants. )
)

       Plaintiff CARRICKMORE PROPERTY & DEVELOPMENT CO., LLC, a

Delaware limited liability company, by its attorneys, submits this Complaint

against the defendants named herein and alleges as follows:

## PARTIES

       1.    Plaintiff CARRICKMORE PROPERTY & DEVELOPMENT CO.,

LLC ("Carrickmore") is a Delaware limited liability company authorized to do

business in the State of New York with its principal office in Rockland County,

New York, within this District.  Carrickmore has been harmed by the business

activities of defendants conducted within this District.

       2.    Carrickmore is informed and believes and based thereon alleges that

defendant JAMES M. NICHOLSON ("Nicholson") is an individual residing in

Saddle River, New York, and conducting business in Pearl River, Rockland

County, and/or the City of New York, New York, within this District.

       3.    Carrickmore is informed and believes and based thereon alleges that

in 2001, Nicholson was barred from the securities brokerage industry for providing

false and misleading information in response to requests for information from the

National Association of Securities Dealers (now known as the Financial Industry

Regulatory Authority) and for failing to respond to other such requests for

information.

       4.    Carrickmore is informed and believes and based thereon alleges that

defendant WESTGATE CAPITAL MANAGEMENT, LLC ("Westgate Capital")

is a Delaware limited liability company doing business in Pearl River, New York, and maintaining executive offices and doing business in the City of New York, New York, within this District.

5.      Carrickmore is informed and believes and based thereon alleges that defendant WESTGATE STRATEGIC GROWTH FUND, LP ("Westgate Strategic") is a Delaware limited partnership doing business in Pearl River, New York, and maintaining executive offices and doing business in the City of New York, New York, within this District.

6.      Carrickmore is informed and believes and based thereon alleges that defendant WESTGATE PREMIER GROWTH FUND, LP ("Westgate Premier") is a Delaware limited partnership doing business in Pearl River, New York, and maintaining executive offices and doing business in the City of New York, New York, within this District.

7.      Carrickmore is informed and believes and based thereon alleges that defendant WESTGATE ALPHA FUND, LP ("Westgate Alpha") is a Delaware limited partnership doing business in Pearl River, New York, and maintaining executive offices and doing business in the City of New York, New York, within this District.

8.      Carrickmore is informed and believes and based thereon alleges that defendant WESTGATE EQUITY FUND, LP ("Westgate Equity") is a Delaware limited partnership doing business in Pearl River, New York, and maintaining executive offices and doing business in the City of New York, New York, within this District.

9.      Carrickmore is informed and believes and based thereon alleges that defendant WESTGATE FOCUS FUND, LP ("Westgate Focus") is a Delaware limited partnership doing business in Pearl River, New York, and maintaining executive offices and doing business in the City of New York, New York, within this District.

10.    Carrickmore is informed and believes and based thereon alleges that defendant WESTGATE SUMMIT FUND, LP ("Westgate Summit") is a Delaware limited partnership doing business in Pearl River, New York, and maintaining executive offices and doing business in the City of New York, New York, within this District.

11.    Carrickmore is informed and believes and based thereon alleges that defendant WESTGATE OPPORTUNITY FUND, LP ("Westgate Opportunity") is a Delaware limited partnership doing business in Pearl River, New York, and maintaining executive offices and doing business in the City of New York, New York, within this District.

12.    Carrickmore is informed and believes and based thereon alleges that defendant WESTGATE ABSOLUTE RETURN FUND, LP ("Westgate Absolute") is a Delaware limited partnership doing business in Pearl River, New York, and maintaining executive offices and doing business in the City of New York, New York, within this District.

13.    Westgate Strategic, Westgate Premier, Westgate Alpha, Westgate Equity, Westgate Focus, Westgate Summit, Westgate Opportunity and Westgate Absolute are referred to collectively as "the Westgate Funds."

14.    Carrickmore is informed and believes and based thereon alleges that Nicholson and Westgate Capital operated investment funds other than the Westgate Funds, which Carrickmore is informed and believes and based thereon alleges were limited partnerships formed in Delaware and/or New York, and were doing business in Pearl River, New York and/or in the City of New York, New York, within this District.

## JURISDICTION AND VENUE

15.    This Court has original jurisdiction over all claims asserted herein pursuant to 28 U.S.C. § 1331 because of claims arising under 10(b) of the 1934 Securities Exchange Act ("Exchange Act") and 17 C.F.R. § 240.10b-5. This Court

also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

16.    Venue is proper in this District pursuant to § 27 of the Exchange Act and 28 U.S.C. § 1391(a)(1) because one or more of the defendants either resides or maintains executive offices in this District, and a substantial portion of the acts and transactions constituting the violations of law alleged in this Complaint occurred in this District. Moreover, defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that have had an effect in this District.

## GENERAL ALLEGATIONS

17.    This litigation arises from a Ponzi scheme perpetrated by defendants with the assistance of third parties whose identities and specific roles in that scheme are not yet known to Carrickmore.

18.    Carrickmore is informed and believes and based thereon alleges that Westgate Capital is an institutional money management firm founded in August 1999 by Nicholson, who holds himself out as that company's President and General Partner. Carrickmore is also informed and believes and based thereon alleges that Westgate Capital has offices in Pearl River, New York and the City of New York, New York.

19.    Carrickmore is informed and believes and based thereon alleges that at all times relevant to this suit, Nicholson owned a majority stake in Westgate Capital, which was the general partner of and controlled all of the Westgate Funds, and was the only individual who possessed the actual and ostensible authority to trade the money invested in the Westgate Funds.

20. From at least in or about 2004 through at least in or about February 2009, Nicholson and Westgate Capital engaged in a fraudulent scheme to defraud actual and potential investors in one or more of the Westgate Funds by making materially false and misleading representations to those investors, including: (a) falsely inflating the value of the Westgate Funds' assets under management; (b) falsely representing that the Westgate Funds were audited by an independent auditing firm; (c) falsely representing the performance of the Westgate Funds to be consistently positive; and (d) falsely guaranteeing that investor funds would be returned to investors by a particular date.

21. Carrickmore is informed and believes and based thereon alleges that Nicholson and Westgate Capital falsely represented to actual and potential investors, at various times, that Westgate Capital had assets under management ranging from $600 million to $900 million while the true value of its assets was materially lower than these figures.

22. Carrickmore is informed and believes and based thereon alleges that beginning no later than 2004, Nicholson and Westgate Capital provided an Offering Memorandum and a Private Placement Agreement to Carrickmore and other potential investors in Westgate Strategic and that these documents contained material misrepresentations, including the assertion that Westgate Strategic was audited by "Havener and Havener" ("Havener"), which was represented to be an independent accounting firm located in New York, New York. This assertion was material to investment in Westgate Strategic by Carrickmore, and it is informed and believes and based thereon alleges that similar Private Offering Memoranda and Private Placement Agreements containing similar material misrepresentations were provided to other actual and potential investors with the intent and effect of inducing them to invest in other Westgate Funds.

23. In fact, this assertion was false. Havener did not and does not exist, and no accountants or auditors by this name are located at the address specified in

these Private Offering Memoranda and Private Placement Agreements. Rather, a company that does business by the name of "The New York City Virtual Presence" (the "Virtual Office") is located at that address.

24.     Carrickmore is informed and believes and based thereon alleges that on February 23, 2004, Nicholson leased space at the Virtual Office purportedly on behalf of Havener, providing a copy of his driver's license, and charging the lease on his personal VISA credit card. Nicholson listed Havener's billing address and business phone number as the billing address and business phone number of Westgate Capital. Nicholson also listed his personal home number as the home telephone number of Havener. In short, Havener was a phantom concocted by Nicholson to perpetrate a fraud on Carrickmore by inducing it to believe that a genuine independent auditor was auditing the books and records of Westgate Capital and the Westgate Funds.

25.     Carrickmore is informed and believes and based thereon alleges that marketing brochures prepared and disseminated by Nicholson and Westgate Capital for Westgate Strategic claimed positive returns for each month from January 2004 through August 2008. A similar brochure for Westgate Growth shows uniformly positive returns for each month between October 1999 and December 2007, with the exception of September 2001. Account statements for individual investors show similar returns through November 2008. However, Carrickmore is informed and believes and based thereon alleges that the actual performance of these and all other Westgate Funds was far lower than what Nicholson and Westgate Capital represented to investors, orally and in writing.

26.     Carrickmore is informed and believes and based thereon alleges that investors have invested at least $100 million with various Westgate Funds since 2004.

27.     Carrickmore is informed and believes and based thereon alleges that beginning in December 2008, based in large measure on public disclosure of the

Ponzi scheme perpetrated by Bernard Madoff, a number of investors in the Westgate Funds sought to redeem their investments. Since that time, dozens of investors have received from Defendants redemption checks in amounts totaling nearly $5 million, but all of those checks were returned as having been drawn against insufficient funds. Other investors have sought, without success, to redeem funds totaling in excess of $10 million. Still others have requested redemptions of funds but have received only a small fraction of their investments.

28.    Carrickmore is informed and believes and based thereon alleges that in September 2008, Nicholson and Westgate Capital sustained trading losses of over $40 million in Westgate Absolute and Westgate Opportunity. As a result of those trading losses, in October 2008, Nicholson and Westgate Capital instructed employees of Westgate Capital to stop trading in Westgate Absolute and Westgate Opportunity. Additionally, Nicholson and Westgate Capital closed Westgate Opportunity because it had sustained approximately $1 million more in losses than it had in assets. Nicholson and Westgate Capital then instructed an employee of Westgate Capital to "rollover" all Westgate Opportunity investors into Westgate Strategic, to conceal from the former that their investments had been lost, and without disclosing to investors in Westgate Strategic that their positions (if any really existed) were being diluted.

29.    Carrickmore is informed and believes and based thereon alleges that Nicholson and Westgate Capital repeatedly represented to Carrickmore and others that Westgate Capital had approximately $900 million under management. This assertion was material to investment in Westgate Strategic by Carrickmore and others who made such investments, and Carrickmore is informed and believes that Nicholson and Westgate Capital made similar material misrepresentations to Carrickmore and other actual and potential investors with the intent and effect of inducing their investments in other Westgate Funds. In fact, Carrickmore is informed and believes this assertion was false: Westgate Capital had no more than

$100 million under management at its height.

30.     Carrickmore is informed and believes and based thereon alleges that Nicholson and Westgate Capital generated the account statements to be sent to investors and instructed at least one employee of Westgate Capital to mail those account statements to investors. These statements contained material misrepresentations concerning the amount of money in the Westgate Funds representing investments by Carrickmore. For example, Carrickmore is informed and believes that Carrickmore's individual statements reflected acceptable financial performance by the Westgate Funds in the fourth quarter of 2008. Yet a Westgate Strategic statement bearing the letterhead of Nataxis Bleichroeder Markets Corp. and dated January 1, 2009 through January 31, 2009, reflecting the fund's positions at the beginning and end of the month, showed the following:

(a)     Westgate Strategic was invested, as of the beginning of the month, $54,610,703 in equities and $115,078,229 in money market instruments.

(b)     During the month, the equities balance increased by $70,950,306 to $125,561,009. The money market instruments balance decreased by $81,000,231 to $34,077,998.

(c)     The net reduction in these balances for the month was $10,049,925. The statement does not disclose whether this reduction represents trading losses or funds withdrawn from the account.

(d)     This statement, if genuine, demonstrates that Nicholson's assertion that he had $900 million under management, and that the Westgate Funds were doing well, was materially false and misleading. Nevertheless, based on Nicholson's many lies and fabrications, plaintiff is informed and believes and based thereon alleges that this statement was false and misleading.

31.     Carrickmore is an investor located in the West Nyack, New York that invested in the Westgate Strategic that Nicholson and Westgate Capital managed. The experiences of and losses sustained by Carrickmore are typical of those of the

remaining Plaintiffs.

      (a)    Carrickmore learned of the existence of Nicholson and the Westgate Funds through business and social contacts, and later received marketing materials from Westgate Capital making representations about the Westgate Funds as managed by Westgate Strategic.  These marketing materials represented that:

           i.     Westgate Capital used a "proprietary analysis" method of investing that would "minimize . . . the volatility normally associated with traditional long-only managers."

          ii.     Westgate Capital "combine[d] sophisticated securities research and analysis along with personalized attention by an experienced portfolio management team."

         iii.     Westgate Capital would focus on diversification as a means to "properly control volatility and correlations" in the market to manage risk.

         iv.     Westgate Capital would manage "liquidity risk" and ensure the availability of cash for redemptions by maintaining lines of credit and being ready to sell large cap company positions.

         v.     What distinguished Westgate Capital as manager of the Westgate Funds from other fund managers was its "disciplined investment strategy," its "hands-on fundamental, bottom up analysis of prospective investments" and its "extensive collaboration with debt side analysis."

      (b)    Carrickmore is informed and believes and based thereon alleges that these representations were materially false and misleading.  Defendants had no proprietary analysis method likely to protect investors against market volatility.  Nor did defendants maintain credit lines and large cap company positions ensuring that sufficient cash would be available for foreseeable redemptions.  Nor did defendants have any special expertise, experience or unique discipline capable of

creating gains where broader markets were sustaining losses. In fact, beginning no later than 2004, defendants were operating a Ponzi scheme using new investments to cover trading losses and diversion of investor funds to Nicholson's own use. Plaintiffs made investments in reliance on these marketing materials and misrepresentations of fact stated in them.

(c)     Dozens of times during 2005, 2006, 2007 and 2008, Carrickmore representative Ray Froimowitz spoke with Nicholson who told him first that Westgate Capital had $250 million under management and more recently that Westgate Capital had approximately $900 million under management. Nicholson also told Froimowitz that these funds would remain sufficiently liquid so that Carrickmore could redeem its shares at any time with five business days' notice regardless of the condition of the market. Carrickmore is informed and believes and based thereon alleges that these statements were materially false or misleading.

(d)     To induce Carrickmore's investment, Nicholson, individually or through his employees and representatives, gave Carrickmore documents including an Offering Memorandum and Private Placement Agreement for Westgate Strategic, Westgate Growth and Westgate Opportunity, which purported to describe the assets in which these fund were invested, and to confirm their historical returns. These documents also purported to provide information about Westgate Strategic's books and records audited by independent auditing firm Havener, which Carrickmore later learned did not exist. Carrickmore is informed and believes and based thereon alleges that the Offering Memorandum and Private Placement Agreement contained materially false and misleading statements of fact about, inter alia, the amount under management, the status of trades, the status of account balances, the genuineness of the business, and the approval of independent auditors.

(e)     In December 2006, Carrickmore made an investment of $350,000 in Westgate Strategic. Thereafter, Carrickmore received account statements showing

the growth of its $350,000 investment to $361,211.70 in the first month, $373,206.13 by the end of the first quarter of 2007, $391,728.29 by the end of the second quarter of 2007, $409,133.99 by the end of the third quarter of 2007, $427,117.86 by the end of the year 2007, $438,551.79 by the end of the first quarter of 2008, $457,711.11 by the end of the second quarter of 2008, $470,034.72 by the end of the third quarter of 2008, and $374,266.39 after a $100,000 withdrawal by the end of November 2008 – the last statement Carrickmore received.  According to these statements, Westgate Strategic achieved an annual return of 14.5% in 2007 (9.5% better than the Dow Jones Industrial Average) and an approximate annual return of 8.2% in 2008 (23% better than the Dow Jones Industrial Average).  Carrickmore is informed and believes and based thereon alleges that these statements were materially false or misleading, and did not reflect the true state of its account.

(f)     At the end of 2008, Carrickmore received from Westgate Capital a document purportedly prepared by Havener dated April 12, 2008, and entitled "Independent Auditors' Report."  The address listed was the specified address described above in New York, New York.  According to the Independent Auditors' Report, Westgate Strategic had $173,148,184 in assets and $30,100 in liabilities. The Independent Auditors' Report also claimed that Westgate Strategic realized a total return of 39.13% during the period of January 1, 2007 through December 31, 2007.  Carrickmore is informed and believes and based thereon alleges that this statement was materially false and misleading.

(g)     At a December 13, 2008 party attended by Nicholson, Froimowitz asked him to comment on the breaking scandal involving hedge fund manager Bernard Madoff.  Nicholson demonstrated no concern.  The following Tuesday, Froimowitz telephoned Nicholson and asked him to meet with him to discuss additional due diligence.  At that time Froimowitz asked Nicholson for audited financial statements for Westgate Strategic.  Nicholson readily agreed to provide

them, and represented that audits had been done by two respected accounting firms. Nicholson stated that because of the volume of requests it would take a week to provide these audited financial statements, but promised to do so. Carrickmore is informed and believes and based thereon alleges that these statements were materially false and misleading.

(h)     When a week had passed and no financials had been received, Froimowitz again telephoned Nicholson. This time he spoke with Westgate Capital employee Robert Lee, who sent him audited financial statements for Westgate Funds other than Westgate Strategic. Froimowitz again contacted Westgate Capital and this time received what purported to be audited financial statements for Westgate Strategic. Froimowitz immediately realized that the figures in the financial statements did not reconcile, and that the statements were materially false and misleading.

(i)     As a result, Froimowitz attempted to contact Havener via the telephone number listed in the Independent Auditors' Report. On December 26, 2008, he attempted to physically visit the Havener offices. By these means, Carrickmore learned that Havener had no physical offices at the address listed in the Independent Auditors' Report, and did not exist. Froimowitz then called Nicholson to ask how this could be so. Nicholson replied that Havener shared offices with listed building tenants and was not listed separately. Carrickmore is informed and believes and based thereon alleges that this statement was materially false and misleading, and that Havener is not a licensed Certified Public Accounting firm in either New York or New Jersey.

(j)     In December 2008 and January 2009, Froimowitz scheduled a series of meetings with Nicholson, the majority of which Nicholson canceled at the last minute. Froimowitz repeatedly asked Nicholson for copies of brokerage account statements and a document showing the balances in partners' accounts. Nicholson gave a series of excuses for his inability to provide this information. Nicholson

later informed Froimowitz that he would not furnish these documents because they would disclose his proprietary trading system. Froimowitz asked to meet the accountants who had audited Westgate Strategic, and to review their work papers. Nicholson refused. Carrickmore is informed and believes and based thereon alleges that each of Nicholson's statements was materially false and misleading.

(k)     In recent weeks, Carrickmore learned that other Plaintiffs have requested a redemption or return of all of their money from Westgate Strategic, and that those Plaintiffs' investments have not been returned in full as demanded. Carrickmore has now reviewed a list of all investors' accounts showing its current balance in Westgate Strategic as $374,407.74 representing 3,522.93 units of the fund. Carrickmore is informed and believes and based thereon alleges that this account statement is materially false and misleading, and that Carrickmore's actual balance in the fund is far less.

(l)     To date, Carrickmore has not received all of the funds it invested in Westgate Strategic.

32.     Carrickmore is informed and believes and based thereon alleges that starting in January 2009, Nicholson stopped paying vendor bills, including the monthly lease on the Pearl River, New York office. Starting on January 15, 2009, Nicholson stopped paying employees of Westgate Capital through Paychex, a payroll and payroll tax services company, and paid them with personal checks instead. Many of Nicholson's January 15, 2009 payroll checks were returned as having been drawn against insufficient funds. Employees of Westgate Capital have not been paid since January 30, 2009. It is now clear that Nicholson, Westgate Capital and the Westgate Funds presently lack sufficient funds to redeem the investments of Carrickmore and the members of the Class described below.

## SEC COMPLAINT AND CRIMINAL CHARGES

33.     On February 25, 2009, the Securities and Exchange Commission ("SEC") charged Nicholson and Westgate Capital with operating a large-scale

scheme to defraud investors, as described in this Complaint. In that proceeding, which is pending before this Court under Case No. 09 CIV 1748, the SEC is seeking an emergency court order (a) freezing the assets of Nicholson, Westgate, and various hedge funds, including the Westgate Funds; (b) preventing the destruction of documents; (c) granting expedited discovery; and (d) requiring Nicholson and Westgate Capital to provide accountings. Additionally, the SEC seeks preliminary and permanent injunctions, disgorgement, and financial penalties against both defendants.

34.     On February 25, 2009, the United States Attorney's Office for the Southern District of New York announced the filing of parallel criminal charges of Securities Fraud and Bank Fraud against Nicholson and, on that date, Nicholson was arrested by the Federal Bureau of Investigation on those charges.

35.     Matters alleged herein on information and belief are based on the existence and contents of the complaints filed in those proceedings.

## CLASS ALLEGATIONS

36.     Carrickmore is an investor in one or more of the Westgate Funds and was defrauded by Nicholson and the remaining defendants, including others not yet identified who assisted the Ponzi scheme, by means of false representations and devices beginning at least as recently as 2004 (and possibly much earlier) and continuing to the present. Carrickmore, like all other Plaintiffs, has demanded and/or is entitled to redemption of all funds invested in the Westgate Funds. Carrickmore, like all other Plaintiffs, has not received redemption of all such invested funds, and fears that its investments have been dissipated by Nicholson and others not yet identified. Carrickmore and these similarly-situated individuals are referred to collectively as "the Class."

37.     The proposed Class consists of approximately 372 investors, a figure susceptible to confirmation from the books and records of Nicholson, Westgate Capital and the Westgate Funds. By this litigation Carrickmore seeks redress for

the losses sustained by the Class members at the hands of defendants, an accounting of the assets of Nicholson, Westgate Capital and the Westgate Funds, and an injunction preventing further operation of the Westgate Funds, and preventing Nicholson and Westgate Capital and their aiders and abettors, from soliciting additional investment funds, soliciting loans, or taking any other affirmative action to continue the operations of the Westgate Funds. Litigation of these issues, and the questions of fact and law arising from them, will resolve the rights of all members of the Class, and therefore will have a binding effect on all Class members.

38. The Class is so numerous that joinder of all Class members is impracticable. The proposed Class has a well-defined community of interest in the questions of fact and law to be litigated. The common questions of law and fact are predominant with respect to the liability issues, relief issues and anticipated affirmative defenses. Carrickmore has claims typical of the Class, and can fairly and adequately represent and protect the interests of the Class, in that there are no material conflicts among Carrickmore's interests and those of other Class members.

39. This action is not collusive as between Carrickmore and Defendants.

40. Carrickmore and its counsel have the necessary resources to litigate this action. Counsel have the experience and ability required to prosecute this action as a class action.

41. The certification of a class in this action is superior to the litigation of a multitude of cases by individual members of the putative class. Class adjudication will conserve judicial resources and will avoid the possibility of inconsistent rulings. Equity dictates that all persons who stand to benefit from the relief sought here should be subject to the lawsuit and hence subject to an order spreading the costs of the litigation among the Class members in relationship to the benefit received.

### FIRST CLAIM FOR RELIEF

### (For violations of § 10(b) of the 1934 Securities Exchange Act
### and 17 C.F.R. § 240.10b-5 Against

### Defendants Nicholson, Westgate Capital, and the Westgate Funds)

42.    Carrickmore re-alleges all facts contained in the paragraphs set forth above, as if set forth in full herein.

43.    Defendants, directly or indirectly, and in connection with the sale or purchase of securities, employed manipulative and deceptive devices, schemes and artifices to defraud Carrickmore and the Class members; made untrue statements of material fact to Carrcikmore and the Class members or omitted to state a material fact which would have made another material misleading statement to Carrickmore and the Class members not misleading; and engaged in acts, practices and courses of business which operated as a fraud or deceit upon Carrickmore and the Class members.

44.    Defendants made untrue statements of material fact relating to the amount of assets they had under management and omitted to state material facts necessary to make statements relating to the same not misleading, as described in particular below:

a.    Carrickmore is informed and believes and based thereon alleges Nicholson variously and falsely represented to both Carrickmore and Class members that Westgate Capital had assets under management ranging from $600 million to $900 million.

b.    Carrickmore is informed and believes and based thereon alleges that the true value of the assets was materially lower, and at no time exceeded $100 million.

c.    The fact that Nicholson, as the majority stakeholder in Westgate Capital and the sole individual who possessed authority to trade the money invested in the Westgate Funds, did know or should have known that the amount of

assets under management was substantially and materially lower than what he represented to Carrickmore and the Class members demonstrates that the false and misleading statements were made knowingly, either intentionally or with conscious disregard for the truth, or recklessly.

45.    Defendants made untrue statements of material fact relating to the presence or absence of independent auditing of assets managed by defendants and omitted to state material facts necessary to make statements relating to the same not misleading, as described in particular below:

a.    Carrickmore is informed and believes and based thereon alleges that, no later than 2004, Nicholson and Westgate Capital provided Carrickmore and Class members an Offering Memorandum and a Private Placement Agreement asserting that Westgate Strategic was audited by Havener, a purportedly independent auditing firm.

b.    Carrickmore is informed and believes and based thereon alleges that Havener did not and does not exist as a physical entity at that or any other known address, and that Havener was in fact the fictitious creation of Nicholson.

c.    The fact that Nicholson provided Carrickmore and Class members with legal documents claiming that Havener was an independent auditing institution while knowing that it in fact had no separate existence from his own business operations demonstrates that the false and misleading statements were made knowingly, either intentionally or with conscious disregard for the truth, or recklessly.

46.    Defendants made untrue statements of material fact relating to the performance of assets managed by defendants and omitted to state material facts necessary to make statements relating to the same not misleading, as described in particular below:

a.    Carrickmore is informed and believes and based thereon alleges that Westgate Strategic disseminated marketing brochures claiming positive

returns for each month from January 2004 through August 2008 and generated account statements reflecting acceptable financial performance during the month of January 2009. Westgate Growth similarly disseminated marketing brochures claiming positive returns for each month from October 1999 through December 2007, with the sole exception of September 2001.

           b.    Carrickmore is informed and believes and based thereon alleges that the actual performance of the assets of both Westgate Strategic and Westgate Growth was far lower than what was represented to Carrickmore and Class members.

           c.    The fact that Westgate Strategic and Westgate Growth did know or should have known of the true state of its assets while representing higher asset figures to Carrickmore and Class members demonstrates that the false and misleading statements were made knowingly, either intentionally or with conscious disregard for the truth, or recklessly.

    47.    The above material and false representations were in connection with the purchase or sale of securities. Westgate Capital sent statements to Carrickmore and Class members identifying their interests in one or more of the Westgate Funds as that of "partners," consistent with the limited partnership business form adopted by the funds. These limited partnership interests, which plaintiffs reasonably believed were investments in legitimate hedge funds, are securities as defined by 15 U.S.C. § 78c(a)(10).

    48.    Carrickmore and Class members invested in the Westgate Funds in reasonable reliance upon Defendant's material and false representations. Through these misrepresentations, defendants lulled Carrickmore and Class members into an unwarranted sense of security by vastly overstating the value and performance of assets under their management and making assurances that such assets were safe and invested prudently.

    49.    As a proximate result of these investments, Carrickmore and Class

members suffered substantial financial losses. Carrickmore is informed and believes and based thereon alleges that Carrickmore and Class members invested more than $100 million with the Westgate Funds since 2004. Carrickmore is further informed and believes and based thereon alleges that most, if not all, of these investments have been lost. Had Carrickmore and Class members been informed of the material adverse information which defendants failed to disclose, they would not have invested as much money with the Westgate Funds, if at all.

50. By reason of the foregoing, defendants have violated §10(b) of the 1934 Securities Exchange Act and 17 C.F.R. § 240.10b-5 promulgated thereunder and are liable to Carrickmore and Class members for the substantial damages which they suffered in connection with their investments with the Westgate Funds.

## SECOND CLAIM FOR RELIEF

### (For Fraud Against Defendants Nicholson, Westgate Capital, and the Westgate Funds)

51. Carrickmore re-alleges all facts contained in the paragraphs set forth above, as if set forth in full herein.

52. As alleged above, defendants made representations regarding various material facts including, among other things, the legitimacy, viability, profitability, financial condition and solvency of the Westgate Funds.

53. At the time defendants made those representations, those representations were false.

54. Carrickmore is informed and believes and based thereon alleges that at the time defendants made those representations, defendants either knew them to be false or had no confidence in their accuracy.

55. Carrickmore is informed and believes and based thereon alleges that defendants made those misrepresentations with the intent to induce Carrickmore and the Class members to act in reliance on those representations.

56. Carrickmore is informed and believes and based thereon alleges that

in making those misrepresentations, Nicholson was acting within the course and scope of his duties as an agent of, and with the knowledge and consent of, all other defendants. Nicholson's knowledge and intent are therefore imputed to these other defendants.

57.     Carrickmore and the Class members actually and justifiably acted in reliance on these misrepresentations by investing in one or more of the Westgate Funds.

58.     Carrickmore and the Class members have been damaged as a direct and proximate result of their actual and justifiable reliance on these misrepresentations, in an amount to be proven at trial.

59.     In engaging in the conduct alleged herein, defendants acted with malice, willfully, wantonly, and in reckless disregard of the rights of Carrickmore and the Class members. As a result, an award of exemplary damages against defendants is necessary and appropriate to punish defendants and to deter or prevent defendants from repeating such conduct in the future.

### THIRD CLAIM FOR RELIEF

### (For Negligent Misrepresentation Against Defendants Nicholson, Westgate Capital, and the Westgate Funds)

60.     Carrickmore re-alleges all facts contained in the paragraphs set forth above, as if set forth in full herein.

61.     As alleged above, defendants made representations regarding various material facts including, among other things, the legitimacy, viability, profitability, financial condition and solvency of the Westgate Funds.

62.     At the time defendants made those representations, those statements were false.

63.     Carrickmore is informed and believes and based thereon alleges that at the time defendants made those representations, defendants had no reasonable basis for believing them to be true and, had they exercised reasonable care, they

would have learned of the falsity of those representations.

64.     Carrickmore is informed and believes and based thereon alleges that defendants made those misrepresentations with the intent to induce Carrickmore and the Class members to act in reliance on those representations.

65.     Carrickmore is informed and believes and based thereon alleges that in making those misrepresentations, Nicholson was acting within the course and scope of his duties as an agent of, and with the knowledge and consent of, the other defendants. Nicholson's knowledge and intent are therefore imputed to these other defendants.

66.     Carrickmore and the Class members actually and justifiably acted in reliance on these misrepresentations by investing in one or more of the Westgate Funds.

67.     Carrickmore and the Class members have been damaged as a direct and proximate result of their actual and justifiable reliance on these misrepresentations, in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF

### (For Breach Of Fiduciary Duty Against Defendants Nicholson, Westgate Capital, and the Westgate Funds)

68.     Carrickmore re-alleges all facts contained in the paragraphs set forth above, as if set forth in full herein.

69.     Carrickmore and the Class members placed their trust and confidence in and relied upon Nicholson and the other defendants, and did so at their urging and request and with their knowledge and consent.

70.     Carrickmore is informed and believes and based thereon alleges that Nicholson created and fostered that fiduciary relationship while acting within the course and scope of his duties as an agent of, and with the knowledge and consent of, the remaining defendants.

71.     As a result, a fiduciary relationship between Carrickmore and the

Class members, on the one hand, and defendants, on the other hand, was created and continued to exist throughout the events alleged in this Complaint.

72.    As a result of that fiduciary relationship, defendants were in equity and good conscience bound to act in good faith and with due regard to the interests of Carrickmore and the Class members, and to act for and to give advice to Carrickmore and the Class members upon matters within the scope of that relationship.

73.    By engaging in the acts alleged above, defendants breached the fiduciary duties they owed to Carrickmore and the Class members.

74.    Carrickmore and the Class members have been damaged as a direct and proximate result of defendants' breach of their fiduciary duties, in an amount to be proven at trial.

75.    In engaging in the conduct alleged herein, defendants acted with malice, willfully, wantonly, and in reckless disregard of the rights of Carrickmore and the Class members.  As a result, an award of exemplary damages against defendants is necessary and appropriate to punish defendants and to deter or prevent defendants from repeating such conduct in the future.

### FIFTH CLAIM FOR RELIEF

### (For Unjust Enrichment Against Defendants
### Nicholson, Westgate Capital, and the Westgate Funds)

76.    Carrickmore re-alleges all facts contained in the paragraphs set forth above, as if set forth in full herein.

77.    Defendants would be unjustly enriched if they are permitted to retain the amounts invested by Carrickmore and the Class members in the Westgate Funds, as well as the proceeds of those investments.

78.    To remedy defendants' unjust enrichment, this Court should order them to disgorge to Carrickmore and the Class members all amounts invested in the Westgate Funds, including the proceeds of those investments.

## SIXTH CLAIM FOR RELIEF

### (For Imposition of a Constructive Trust Against Defendants
### Nicholson, Westgate Capital, and the Westgate Funds)

79.     Carrickmore re-alleges all facts contained in the paragraphs set forth above, as if set forth in full herein.

80.     As a result of the conduct complained of, defendants made, or aided and abetted the making of, numerous misrepresentations to and/or concealed material facts from Carrickmore and the Class members, despite defendants' duties to, among other things, disclose to Carrickmore and the Class members the true facts regarding defendants. Defendants have fraudulently misappropriated the funds of Carrickmore and the Class members, profiting from them, and Carrickmore and the Class members have a right to return of these funds.

81.     Carrickmore and the Class members seek a declaratory judgment that the illicit misappropriation of funds described above, and all proceeds derived therefrom, are and have been held in constructive trust for the benefit of Carrickmore and the Class members.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment as follows:

### AS TO THE FIRST CLAIM FOR RELIEF:

1.     An amount sufficient to compensate Carrickmore and the Class members for the damages they have sustained as a result of defendants' conduct, in an amount to be proven at trial, together with interest thereon as allowed by law;

2.     Costs of suit; and

3.     Such other relief as the Court may grant.

### AS TO THE SECOND CLAIM FOR RELIEF:

1.     An amount sufficient to compensate Carrickmore and the Class members for the damages they have sustained as a result of defendants' conduct, in an amount to be proven at trial, together with interest thereon as allowed by law;

2.    Exemplary damages in an amount sufficient to punish defendants and to deter or prevent defendants from repeating such conduct in the future;

3.    Costs of suit; and

4.    Such other relief as the Court may grant.

### AS TO THE THIRD CLAIM FOR RELIEF:

1.    An amount sufficient to compensate Carrickmore and the Class members for the damages they have sustained as a result of defendants' conduct, in an amount to be proven at trial, together with interest thereon as allowed by law;

2.    Costs of suit; and

3.    Such other relief as the Court may grant.

### AS TO THE FOURTH CLAIM FOR RELIEF:

1.    An amount sufficient to compensate Carrickmore and the Class members for the damages they have sustained as a result of defendants' conduct, in an amount to be proven at trial, together with interest thereon as allowed by law;

2.    Exemplary damages in an amount sufficient to punish defendants and to deter or prevent defendants from repeating such conduct in the future;

3.    Costs of suit; and

4.    Such other relief as the Court may grant.

### AS TO THE FIFTH CLAIM FOR RELIEF:

1.    An order requiring defendants to disgorge to Plaintiffs all amounts invested in the Westgate Funds, including the proceeds of those investments;

2.    Costs of suit; and

3.    Such other relief as the Court may grant.

### AS TO THE SIXTH CLAIM FOR RELIEF:

1.    A declaration that defendants' illicit misappropriation of funds described above, and all proceeds derived therefrom, are and have been held in constructive trust for the benefit of Plaintiffs;

2.    Costs of suit; and

3.      Such other relief as the Court may grant.

Dated:  March 2, 2009                    **ANDERSON KILL &OLICK, PC**

                                         By: _____
                                             GREGORY HANSEN
                                         Attorneys for Plaintiff CARRICKMORE
                                         PROPERTY & DEVELOPMENT CO.,
                                         LLC, a Delaware limited liability company,
                                         On Its Own Behalf And On Behalf of All
                                         Others Similarly Situated

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b)(1) of the Federal Rules of Civil Procedure,  Plaintiff CARRICKMORE PROPERTY & DEVELOPMENT CO., LLC, a Delaware limited liability company, On Its Own Behalf And On Behalf of All Others Similarly Situated, hereby demands trial by jury.

Dated:  March 2, 2009            **ANDERSON KILL &OLICK, PC**

By: _____

       GREGORY HANSEN
Attorneys for Plaintiff CARRICKMORE
PROPERTY & DEVELOPMENT CO.,
LLC, a Delaware limited liability company,
On Its Own Behalf And On Behalf of All
Others Similarly Situated

## CERTIFICATION

I, Ray Froimowitz, declare and certify as follows:

1.      I am an authorized representative of Plaintiff CARRICKMORE PROPERTY & DEVELOPMENT CO., LLC, a Delaware limited liability company ("Carrickmore"), and I am authorized to make this certification on its behalf.

2.      I have reviewed the foregoing Complaint and have authorized its filing on Carrickmore's behalf.

3.      Neither Carrickmore nor I purchased the securities that are the subject of that Complaint at the direction of Carrickmore's counsel or in order to participate in any private action arising under 15 U.S.C. § 78(a) et seq.

4.      Carrickmore is willing to serve as the representative party on behalf of the Class described in the Complaint, including providing testimony at deposition and trial, if necessary.

5.      The following are all of the transactions involving Carrickmore in the securities that are the subject of the Complaint during the class period specified in the Complaint:

6.      Carrickmore is an investor located in West Nyack, New York that invested in the Westgate Strategic which Nicholson and Westgate Capital managed. Carrickmore learned of the existence of Nicholson and the Westgate Funds through business and social contacts, and later received marketing materials from Westgate Capital making representations about the Westgate Funds as managed by Westgate Strategic. These marketing materials represented that:

> (a)     Westgate Capital used a "proprietary analysis" method of investing that would "minimize . . . the volatility normally associated with traditional long-only managers."

> (b)     Westgate Capital "combine[d] sophisticated securities research

and analysis along with personalized attention by an
experienced portfolio management team."

(c)  Westgate Capital would focus on diversification as a means to
"properly control volatility and correlations" in the market to
manage risk.

(d)  Westgate Capital would manage "liquidity risk" and ensure the
availability of cash for redemptions by maintaining lines of
credit and being ready to sell large cap company positions.

(e)  What distinguished Westgate Capital as manager of the
Westgate Funds from other fund managers was its "disciplined
investment strategy," its "hands-on fundamental, bottom up
analysis of prospective investments" and its "extensive
collaboration with debt side analysis."

7.     Based on knowledge I acquired as described herein, I believe that
these representations were materially false and misleading.  I do not believe that
defendants had a proprietary analysis method likely to protect investors against
market volatility, nor that they maintained credit lines and large cap company
positions ensuring that sufficient cash would be available for foreseeable
redemptions, nor that they had any special expertise, experience or unique
discipline capable of creating gains where broader markets were sustaining losses.
To the contrary, I believe that beginning no later than 2004, defendants were
operating a Ponzi scheme using new investments to cover trading losses and
diversion of investor funds to Nicholson's own use.  Carrickmore and other
plaintiffs made investments in reliance on these marketing materials and
misrepresentations of fact stated in them.

8.     Dozens of times during 2005, 2006, 2007 and 2008, I spoke with
Nicholson who told me first that Westgate Capital had $250 million under

management and more recently that Westgate Capital had approximately $900 million under management. I am informed and believe that those statements were materially false and misleading. Nicholson also told me that these funds would remain sufficiently liquid so that Carrickmore could redeem its shares at any time with five business days' notice regardless of the condition of the market. Based on knowledge I acquired as described herein, I believe that these statements were materially false or misleading.

9.     To induce Carrickmore's investment, Nicholson, individually or through his employees and representatives, gave Carrickmore materials including an Offering Memorandum and Private Placement Agreement (or documents in the nature thereof) for Westgate Strategic, Westgate Growth and Westgate Opportunity, which purported to describe the assets in which these fund were invested, and to confirm their historical returns. These documents also purported to provide information about Westgate Strategic's books and records audited by independent auditing firm Havener, which I later learned did not exist. Based on knowledge I acquired as described herein, I believe that the Offering Memorandum and Private Placement Agreement contained materially false and misleading statements of fact about, *inter alia*, the amount under management, the status of trades, the status of account balances, the genuineness of the business, and the approval of independent auditors.

10.    In December 2006, Carrickmore made an investment of $350,000 in Westgate Strategic. Thereafter, Carrickmore received account statements showing the growth of its $350,000 investment to $361,211.70 in the first month, $373,206.13 by the end of the first quarter of 2007, $391,728.29 by the end of the second quarter of 2007, $409,133.99 by the end of the third quarter of 2007, $427,117.86 by the end of the year 2007, $438,551.79 by the end of the first quarter of 2008, $457,711.11 by the end of the second quarter of 2008,

$470,034.72 by the end of the third quarter of 2008, and $374,266.39 after a
$100,000 withdrawal by the end of November 2008 – the last statement
Carrickmore received. According to these statements, Westgate Strategic achieved
an annual return of 14.5% in 2007 (9.5% better than the Dow Jones Industrial
Average) and an approximate annual return of 8.2% in 2008 (23% better than the
Dow Jones Industrial Average). Based on knowledge I acquired as described
herein, I believe that these statements were materially false or misleading, and did
not reflect the true state of its account.

11.   At the end of 2008, Carrickmore received from Westgate Capital a
document purportedly prepared by Havener dated April 12, 2008, and entitled
"Independent Auditors' Report." The address listed was the specified address
described above in New York, New York. According to the Independent Auditors'
Report, Westgate Strategic had $173,148,184 in assets and $30,100 in liabilities.
The Independent Auditors' Report also claimed that Westgate Strategic realized a
total return of 39.13% during the period of January 1, 2007 through December 31,
2007. Based on knowledge I acquired as described herein, I believe that this
statement was materially false and misleading.

12.   At a December 13, 2008 party attended by Nicholson, I asked him to
comment on the breaking scandal involving hedge fund manager Bernard Madoff.
Nicholson demonstrated no concern. The following Tuesday, I telephoned
Nicholson and asked him to meet with me to discuss additional due diligence. At
that time I asked Nicholson for audited financial statements for Westgate Strategic.
Nicholson readily agreed to provide them, and represented that audits had been
done by two respected accounting firms. Nicholson stated that because of the
volume of requests it would take a week to provide these audited financial
statements, but promised to do so. Based on knowledge I acquired as described
herein, I believe that that these statements were materially false and misleading.

13.    When a week had passed and no financials had been received, I again telephoned Nicholson. This time I spoke with Westgate Capital employee Robert Lee, who sent me audited financial statements for Westgate Funds other than Westgate Strategic. I again contacted Westgate Capital and this time received what purported to be audited financial statements for Westgate Strategic. I immediately realized that the figures in the financial statements did not reconcile, and that the statements were materially false and misleading.

14.    As a result, I attempted to contact Havener via the telephone number listed in the Independent Auditors' Report. On December 26, 2008, I attempted to physically visit the Havener offices. By these means, I learned that Havener had no physical offices at the address listed in the Independent Auditors' Report, and did not exist. I then called Nicholson to ask how this could be so. Nicholson replied that Havener shared offices with listed building tenants and was not listed separately. Based on knowledge I acquired as described herein, I believe that this statement was materially false and misleading.

15.    In December 2008 and January 2009, I scheduled a series of meetings with Nicholson, the majority of which Nicholson canceled at the last minute. I repeatedly asked Nicholson for copies of brokerage account statements and a document showing the balances in partners' accounts. Nicholson gave a series of excuses for his inability to provide this information. Nicholson later informed me that he would not furnish these documents because they would disclose his proprietary trading system. I asked to meet the accountants who had audited Westgate Strategic, and to review their work papers. Nicholson refused. Based on knowledge I acquired as described herein, I believe that each of Nicholson's statements was materially false and misleading.

16.    In recent weeks, I learned that other Plaintiffs have requested a redemption or return of all of their money from Westgate Strategic, and that those

Plaintiffs' investments have not been returned in full as demanded. I have now reviewed a list of all investors' accounts showing its current balance in Westgate Strategic as $374,407.74 representing 3,522.93 units of the fund. Based on knowledge I acquired as described herein, I believe that this account statement is materially false and misleading, and that Carrickmore's actual balance in the fund is far less.

17.     To date, Carrickmore has not received all of the funds it invested in Westgate Strategic.

18.     During the three years preceding the date of this Certification, neither Carrickmore nor I filed any other actions under 15 U.S.C. § 78(a) et seq., in which Carrickmore or I have sought to serve as a representative party on behalf of a class.

19.     Carrickmore will not accept any payment for serving as a representative party on behalf of a class beyond the Carrickmore's pro rata share of any recovery, except as ordered or approved by the Court in accordance with paragraph (4) of 15 U.S.C. § 78u-4.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 2, 2009, at New York, New York.

Ray Froimowitz